UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LOCAL 513, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:04-CV-267 (CEJ) ) |
| SUNRISE CONSTRUCTION, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil. The plaintiffs' motion is supported by an affidavit and documents. Defendant Sunrise Construction, Inc., (Sunrise Construction) has not responded, and the time allowed for doing so has expired.

Plaintiffs filed this action, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, and the Labor Relations Management Act (LMRA), 29 U.S.C.§§ 141 *et seq.*, to recover delinquent fringe benefit contributions. Plaintiffs are the employee benefit plans (the Pension, Health and Welfare, Vacation, Annuity, and Joint Apprenticeship Training Funds) for the International Union of Operating Engineers Local 513 (the Union), the trustees for the plans, as well as the Union itself. Sunrise Construction was bound by a collective bargaining agreement with the Union. On January 5, 2005, the Court entered default judgment in favor of plaintiffs and against Sunrise Construction in the amount of $401,750.37. (Doc. #17). To date, Sunrise Construction has paid $28,693.49 of the judgment. (Doc. #35-8, at 2,

par. 9). Because Sunrise Construction has failed to make further payments, a balance of $373,056.88 remains due on the judgment.

Sunrise Construction was a Missouri corporation that "was administratively dissolved on July 29, 2006 for failing to file a correct and current annual report." (Doc. #35-8, at 1, para. 5). Mark D. Lucido was the President and sole director of Sunrise Construction, and Judy Gilliland was the Secretary. On January 9, 2007, Gilliland organized Pavement Constructors, LLC, which she later renamed Diverse Construction Group, LLC (Diverse Construction). (Doc. ##35-5, 35-6). Plaintiffs recently discovered that Diverse Construction performed work under a contract project for the Missouri Department of Conservation. (Doc. #35-8, at 2, par. 12). This information "contained a statement from Judy Gilliland and Mark Lucido[,] describing the legal existence of Diverse Construction Group, LLC." (Doc. #35-8, at 2, para. 13). In the undated statement, Gilliland and Lucido, noted that they had "recently changed [the corporation's] name from Sunrise Construction to Diverse Construction Group LLC to better reflect the type of work [they] perform." (Doc. #35-7). The statement also listed "Judy Gilliland" as the "Owner" and "Mark Lucido" as the "Operators Manager." Id.

### Discussion

Under ERISA, one business entity is the alter ego of another if the two entities exist independently in form only, and those separate forms are used as a subterfuge to defraud, to justify a wrong, or to mislead or discourage pursuit of legal action. See, e.g., Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997). Under the LMRA,

one business entity is the alter ego of another, and therefore is liable for its obligations, if the two are substantially identical in terms of ownership, management, supervision, business purpose, operations, customers, equipment, facilities, and employees.  See, e.g., Woodline Motor Freight, Inc. v. N.L.R.B., 843 F.2d 285, 288-89 (8th Cir. 1988).  Not all of the outlined factors need be identical.

Federal courts have "the same authority to aid judgment creditors in supplementary proceedings as that which is provided to state courts under local law."  H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc., 994 F.2d 476, 477 (8th Cir.), cert. denied, 510 U.S. 1019 (1993) (citation omitted).  The Eighth Circuit has "recognized the availability of the creditor's bill in equity under Missouri law."  Id.  The creditor's bill in equity is a long-recognized but infrequently used tool to assist creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law."  Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922 (Mo. Ct. App. 1989).  The creditor's bill has its roots in equity jurisprudence, and remains viable in modern times.  Although a creditor's bill can be brought in a separate equitable action, it is appropriate to bring it by motion in the underlying lawsuit where judgment was originally obtained.  Fleming Companies, Inc. v. Rich, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997).

"A creditor's bill is considered the equitable equivalent of garnishment on execution and is comparable to proceedings supplementary to and in aid of

execution." Shockley, 771 S.W.2d at 925 (citing United States ex rel. Goldman v. Meredith, 596 F.2d 1353, 1357 (8th Cir. 1979)).

A creditor's bill in equity under Missouri law "enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" H.H. Robertson Co. v. V.S. DiCarlo Gen. Contractors, Inc., 994 F.2d 476, 477 (8th Cir. 1993) (quoting Shockley v. Harry Sander Realty Co., Inc., 771 S.W.2d 922, 925 (Mo. Ct. App. 1989)). The Missouri alter ego standard applies to such claims. Id.; see also Mobius Mgmt. Sys., Inc. v. West Physician Search, L.L.C., 175 S.W.3d 186, 189 (Mo. Ct. App. 2005).

To pierce the corporate veil under Missouri law and recover from the assets of a corporation's alter ego, a creditor must show that the alter ego has "control" of the entity's finances, policy, and business practices with respect to the transaction at issue. Mobius Mgmt., 175 S.W.3d at 188. The creditor must also show a "breach of duty--that this control was used by the corporation to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of the plaintiff's legal rights" that caused the injury to the plaintiff. Id. at 188-89. In addition, "the corporate veil may be pierced when a corporation is undercapitalized, or when its assets are stripped to avoid creditors. Inadequate capitalization is circumstantial evidence of an improper purpose or reckless disregard for the rights of others." Mobius Mgmt., 175 S.W.3d at 189 (citations omitted).

Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. Mid-Missouri Tel. Co. v. Alma Tel. Co., 18 S.W.3d 578, 582 (Mo. Ct. App. 2000). Missouri courts will "pierce the corporate veil" and hold a defendant liable for the torts of another corporation under the "instrumentality" or "alter ego" rule if the plaintiff can establish:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 306 (8th Cir. 1992), cert. denied, 508 U.S. 908 (1993); see also Mobius Mgmt., 175 S.W.3d at 189. This standard is almost identical to the standard applied in ERISA cases. See Kansas City Laborers, 104 F.3d at 1055.

In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, the Court looks to a number of factors, including: the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations. See Operating Engineers Local No. 101 Pension Fund v. K.C. Excavating & Grading,

Inc., No. 01-0087-CV-W-SOW, 2002 WL 1492103, at *6 (W.D. Mo. Mar. 11, 2002); see also H.H. Robertson Co., 789 F. Supp. at 1000; Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 774 (Mo. Ct. App. 1994).

In the instant case, plaintiffs have established the first element under Telecom Corp., 981 F.2d 305. Sunrise Construction and Diverse Construction are separate entities in form only. Gilliland and Lucido admitted that the formation of Diverse Construction was merely a name change, and that both entities share the same principals. See (Doc. #35-7). Moreover, both entities share common management: (1) Lucido was the president and sole director and Gilliland was the secretary of Sunrise Construction; and (2) Lucido is the operators manager and Gilliland is the owner of Diverse Construction. As such, the Court believes that, in the capacity of officers of both entities, Gilliland and Lucido exercised control over the entities' finances, policies and business practices.

Plaintiffs have also shown that Lucido and Gilliland's control caused Sunrise Construction to breach its legal duty. Based on its collective bargaining agreement with the Union, Sunrise Construction had a positive, legal duty to file monthly reports and pay contributions for each covered employee. See (Doc. #17, at 2). Because Sunrise Construction failed to make such contributions, the Court entered judgment against Sunrise in the amount of $401,750.37. However, Sunrise Construction has paid only $28,693.49. Without satisfying the debt, Lucido and Gilliland dissolved Sunrise Construction and organized Diverse Construction, presumably to avoid satisfying this debt. Therefore, the Court

finds that Lucido and Gilliland's control caused Sunrise Construction not to pay the total debt.

Finally, plaintiffs have demonstrated the third element. Gilliland and Lucido's control of Sunrise Construction's operations and finances and Sunrise Constructions' breach of its contractual obligations resulted in plaintiffs' inability to collect their total judgment against Sunrise Construction.

Based on the foregoing, the Court finds that Diverse Construction, Gilliland, and Lucido are the alter egos of Sunrise Construction, and that they are liable, jointly and severally, for the balance of the previous judgment against Sunrise Construction.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil [Doc. #34] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 6th day of July, 2009.